# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOUALY MANGSANGHANH, | 1:12-CV-00534 LJO GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| W. MILLER, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Superior Court of California, County of Fresno, following her conviction by jury trial on July 6, 2007, of two counts of first degree murder (Cal. Penal Code § 187). (CT[1] 584.) The jury further found true a special circumstance multiple-murder allegation (Cal. Penal Code § 190.2(a)(3)), and an allegation that Petitioner had committed the murders for the benefit of, or in association with, a criminal street gang (Cal. Penal Code § 186.22(b)). (CT 545-546, 584.) On November 30, 2007, Petitioner was sentenced to serve two indeterminate, concurrent terms of life without the possibility of parole. (CT 584.)

---

[1] "CT" refers to the Clerk's Transcript on Appeal.

1  The gang enhancement was imposed but stayed. (CT 584.)

2  Petitioner timely filed a notice of appeal. On February 19, 2009, the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), affirmed Petitioner's judgment in a reasoned decision. (See Lodged Doc. No. 1.) On March 25, 2009, Petitioner filed a petition for review in the California Supreme Court. (See Lodged Doc. No. 2.) On May 13, 2009, the petition was summarily denied. (See Lodged Doc. No. 3.)

Petitioner also sought collateral relief in the state courts. On December 17, 2009, she filed a habeas petition in the Fresno County Superior Court. (See Lodged Doc. No. 4, Attachments.) On February 5, 2010, the petition was denied. (See Lodged Doc. No. 4, Attachments.) She then filed a petition for writ of habeas corpus in the Fifth DCA on February 22, 2010. (See Lodged Doc. No. 6.) On March 3, 2011, the petition was denied. (See Lodged Doc. No. 6.) On March 16, 2011, she filed a habeas petition in the California Supreme Court. (See Lodged Doc. No. 4.) On October 12, 2011, the California Supreme Court denied the petition with citation to In re Swain, 34 Cal.2d 300, 304 (1949). (See Lodged Doc. No. 5.)

On March 21, 2012, Petitioner filed the instant federal habeas petition in this Court. The petition presents the following grounds for relief: 1) Petitioner claims she was denied the effective assistance of counsel; 2) She claims the prosecutor committed misconduct; 3) She claims her due process rights were violated when the defense was only provided transcripts for ten of fifty taped interviews. On June 25, 2012, Respondent filed an answer to the petition. On July 16, 2012, Petitioner filed a traverse.

## STATEMENT OF FACTS[2]

Although Mangsanghanh is not a member of the criminal street gang known as the Asian Boyz (Boyz), the father of her child, Sopheak Chhang, is a member. Mangsanghanh sometimes went with Chhang when he was associating with gang members because she was afraid Chhang, who has a limited mental capacity, would be influenced by gang members. On January 31, 2007, the night of the murders, Mangsanghanh was with Chhang at Yann's home, along with a number of other gang members. Mangsanghanh had known Yann for a long time. He was a long-time Boyz member, and his house was known as a gang hangout. Also present that evening were

---

[2] The Fifth DCA's summary of the facts in its February 19, 2009, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the Fifth DCA.

gang members Chea, Perkins, Peter Khounvixay, Keo Som, Panya Channita, Jose Perez, and several others.

The Boyz have long been involved in a "war" with the Tiny Rascal Gang (TRG). There had been at least 30 shootings involving these two gangs within the four years preceding the murders. Several days prior to the murders, Som was jumped and assaulted by members of the TRG. In retaliation for the assault, several Boyz members executed a drive-by shooting in TRG territory. The TRG immediately retaliated with a drive-by shooting directed at Som's parents' house. After the shooting at Som's parents' house, Yann borrowed a loaded .45-caliber semiautomatic handgun from fellow Boyz member Victor Alvarez.

On the night of the murders, the gang discussed the recent shootings and the need to retaliate. The group was talking "trash" about the TRG. Yann was angry and wanted to retaliate. According to Som, Mangsanghanh noted the need to retaliate for the death of Boyz member Olina Mung, who had been killed a year earlier by the TRG. Alvarez was not there the night of the murders, but his gun was present. Channita testified that he saw Yann give Alvarez's semiautomatic handgun to Perez. Som testified the handgun was on the television stand at Yann's house and Perez took it from that location. Som, Channita, and Khounvixay left to find more guns. They returned with an AK-47 and ammunition they had gotten from Boyz member Laja Oupathame. Chea racked the AK-47. Yann told the group if they were "going to do something, do it smart."

Chea, Perez, Chhang, and Mangsanghanh left to do a retaliatory shooting shortly after midnight. Mangsanghanh drove to Easterby Elementary School in Fresno and parked. Across from the school was an apartment complex known to be a TRG hangout. Chea and Perez got out of the car, telling Mangsanghanh to wait. Mangsanghanh and Chhang stayed behind in the car. Mangsanghanh heard numerous gunshots. Chea and Perez ran back to the car with the guns. Mangsanghanh drove off.

A number of young women were in the parking lot of the apartment complex and testified that, shortly after midnight on February 1, 2007, they were fired at as they sat in or around cars in the parking lot. Nath Ouch, who was eight months pregnant, was shot in the back and died from her wounds. Her unborn child also died.

A large number of bullets and spent casings were found at the scene of the shooting and at the elementary school. These were traced back to the AK-47 and the .45-caliber handgun. There was bullet damage to signs and cars near the site establishing the trajectory of the bullets as coming from the school grounds. Alvarez retrieved his gun after the murders. The .45-caliber handgun ultimately was located under the seat of Alvarez's truck.

When contacted by police and told that her car was to be impounded, Mangsanghanh became angry and told police, "fuck that pregnant roach bitch, she got what she deserved." "Roach" is a derogatory term used to refer to TRG members. Mangsanghanh told police that the shooting was retaliatory. She also said that she was angry that police had not yet solved the Mung murder. She appeared pleased when told that this was wrong and that the suspect was in custody. Ouch was not a gang member, but she was the wife of a TRG member who was implicated in the Mung murder.

The prosecution's gang expert Detective Villalvazo testified that, in his opinion, the murders were done to benefit the Boyz in that it sent a message to the TRG that they were not to mess with the Boyz. Villalvazo also testified that some of the Boyz's primary activities were to engage in criminal acts such as possession of firearms, firing at residences, attempted murders, murders, stealing cars, drug sales, and intimidation of

witnesses. There was also proof of a number of recent predicate gang offenses committed by Boyz members. There is no dispute that the TRG and Boyz are criminal street gangs active in the United States, specifically in Fresno.

Alvarez testified pursuant to a plea agreement, according to which he entered a plea of guilty to accessory after the fact in exchange for his testimony. Som, Khounvixay, Channita, and Oupathame also negotiated plea agreements. They entered a plea of guilty to voluntary manslaughter in exchange for their testimony. Perez remained a fugitive at the time of trial. Chhang was declared incompetent to stand trial.

(See Lodged Doc. No. 1.)

**DISCUSSION**

I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that she suffered violations of her rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II. Standard of Review

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of her claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624 (2011); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009), *quoting* Wright v. Van Patten, 552 U.S. 120, 125 (2008); see Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405, *quoting* Webster's Third

1 New International Dictionary 495 (1976). "A state-court decision will certainly be contrary to
2 [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the
3 governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to"
4 clearly established Supreme Court precedent, the state decision is reviewed under the pre-
5 AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

6     "Under the 'reasonable application clause,' a federal habeas court may grant the writ if
7 the state court identifies the correct governing legal principle from [the] Court's decisions but
8 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.
9 "[A] federal court may not issue the writ simply because the court concludes in its independent
10 judgment that the relevant state court decision applied clearly established federal law erroneously
11 or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer,
12 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists
13 could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."
14 Harrington, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the
15 correctness of the state courts decision, the decision cannot be considered unreasonable. Id. If
16 the Court determines that the state court decision is objectively unreasonable, and the error is not
17 structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious
18 effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

19     Petitioner has the burden of establishing that the decision of the state court is contrary to
20 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
21 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
22 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
23 state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th
24 Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

25     AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1)
26 is limited to the record that was before the state court that adjudicated the claim on the merits,"
27 and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v.
28 Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011). "Factual determinations by state

courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003), *citing* 28 U.S.C. § 2254(e)(1). However, a state court factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963), *overruled by,* Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

II.   Procedural Default

Respondent argues the claims raised in the federal petition remain unexhausted because Petitioner failed to "fairly present" the claims to the state courts. The California Supreme Court denied the habeas petition with citation to In re Swain, 34 Cal.2d 300, 304 (1949), which refers to California's rule that a petitioner must allege with particularity the facts supporting her claims.[3] In re Swain, 34 Cal.2d at 304; see also Ylst, 501 U.S. at 805, 111 S.Ct. at 2595; Kim v. Villalobos, 799 F.2d 1317,1319 (9th Cir. 1986). An In re Swain citation is generally a denial on procedural grounds. See Kim, 799 F.2d at 1319; Harris v. Superior Court, 500 F.2d 1124, 1128 (9th Cir.1974). A claim denied under In re Swain is considered unexhausted because the petitioner can re-file the claim and cure the defect by alleging the claim with particularity. Kim, 799 F.2d at 1319; Harris, 500 F.2d at 1128.

If the California Supreme Court denies a claim under In re Swain because the claim was not alleged with sufficient particularity, the federal district court must examine the petition to determine if the claims met the federal standard of "fair presentation" before deciding whether to bar the claim in federal court. Kim, 799 F.2d at 1319; see also Harmon v. Ryan, 959 F.2d 1457, 1462 (9th Cir. 1991). If the Court finds that the claims have been "fairly presented" to the California Supreme Court, the Ninth Circuit has found that re-filing is unnecessary and the court should review the claim on the merits. Kim, 799 F.2d at 1321; see also 28 U.S.C. § 2254 (b).

---

[3] California courts also cite In re Swain as a timeliness bar to mean that the petitioner has failed to justify the reason for excessive delay in filing the petition. In re Swain, 34 Cal.2d at 302; see also In re Clark, 5 Cal.4th 750, 783 (1993); Ex parte Dixon, 41 Cal.2d 756, 760 (1953). However, in this case, the California Supreme Court cited page 304 of In re Swain, not page 302 which deals with timeliness. Thus, the Court will assume the California Supreme Court cited In re Swain to state that the claims were not alleged with sufficient particularity.

7

In the form petition filed in the California Supreme Court, Petitioner first claimed she was denied effective assistance of counsel in violation of her rights under the Sixth and Fourteenth Amendments to the Constitution. Petitioner cited several cases, including the hallmark Supreme Court case of Strickland v. Washington, 466 U.S. 668 (1984). Within the claim, Petitioner set forth four subclaims. In the first subclaim, she alleged the attorney erred in neglecting to pursue severance which in turn prejudiced Petitioner because she was continuously associated with gang members. She then referenced parts of the record pinpointing those instances. The Court finds this subclaim was pled with sufficient particularity to fairly present the claim. The legal basis of the claim was set forth and sufficient facts were stated in support. See Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir.2008) (A claim is fairly presented to the state court when the petition describes the operative facts and the federal legal theory on which the claim is based).

In the second subclaim, Petitioner alleged the implied association with gang members also prejudiced her because of the multiple defense strategies that were presented. She alleged that the jury would not have been able to ignore certain statements of certain co-defendants against her despite instructions to the contrary. She pointed to two cell-mates who were brought up by cross-examination of a detective. Petitioner did not factually support this claim. She did not specify which statements were prejudicial, or how the statements prejudiced her. She did not specify which defense strategies "worked against [her]." (See Lodged Doc. No. 4.) She did not detail what the two cell-mates stated that was prejudicial to her defense, or how their statements were prejudicial. The subclaim should be dismissed because Petitioner failed to "fairly present" the claim to the California Supreme Court. Kim, 799 F.2d at 1319.

In the third subclaim, Petitioner alleged her attorney erred by modifying his cross-examination of one of the plea bargain witnesses so as not to anger the judge and prosecution. Although she cited to the record in support of the claim, Petitioner failed to specify how her attorney modified his cross-examination or how the modification prejudiced her. Thus, the claim was not fairly presented and should be dismissed.

In the fourth subclaim, Petitioner contended that her attorney erred in failing to allow for

a lesser-included offense. She states the attorney wanted an "all or nothing" defense. (See Lodged Doc. No. 4.) She alleged the jury would have found her guilty of second degree murder rather than first degree if second degree had been an alternative. The Court finds the claim was fairly presented to the California Supreme Court.

In ground two of the form petition, Petitioner presented a claim of prosecutorial misconduct. She alleged a violation of her constitutional right to a fair trial as guaranteed by the Fifth Amendment. She claimed the prosecutor made misrepresentations by continuously grouping all co-defendants as members of a gang. She stated the prosecution conceded she was not a member of any gang, but the prosecutor repeatedly associated her with the group of gang members. She states she was prejudiced by the vast amount of gang evidence that was marshaled concerning her co-defendants who were gang members, including evidence of approximately 30 shootings as well as extensive criminal backgrounds. The Court finds the claim was fairly presented. The legal basis of the claim was set forth, and sufficient facts were presented in support.

In her third and final ground, Petitioner alleged the trial court unfairly restricted the defense's cross-examination of key prosecution witnesses because only ten of fifty taped interviews were transcribed and prepared by the prosecution. She claims she was denied her right to present a defense because the defense could not properly cross-examine without transcripts of all of the witnesses. In support of her claim, she cited to several Supreme Court cases. Petitioner set forth an adequate legal basis for her claim; however, her factual support of the claim was insufficient. Petitioner did not specify any of the witnesses and she did not state how transcripts of recorded interviews would have assisted her attorney's cross-examination. She claimed the transcripts would have assisted in allowing her attorney to catch any inconsistencies; however, she did not claim that there were in fact any inconsistencies, and if so, what they were and how the defense could have capitalized on them. Her claim is completely conclusory. Therefore, the claim was not fairly presented to the California Supreme Court and should be dismissed.

In sum, subclaims two and three of ground one, and ground three, should be dismissed

because the claims were not fairly presented to the California Supreme Court. Kim, 799 F.2d at 1319.  In any case, the Court will address the claims as they are without merit.

III.     Review of Claims

      A.  Ineffective Assistance of Counsel

Petitioner first claims she was denied the effective assistance of counsel.  She presents the claim with four subclaims where defense counsel rendered ineffective assistance.  The Court will address each subclaim separately.

      1.  Severance of Trial

In the first subclaim, Petitioner alleges defense counsel erred by failing to pursue severance so as to be tried separately from her co-defendants.  She claims she was prejudiced by being continuously associated with gang members even though the prosecution conceded she was not a gang member.

The law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Harrington v. Richter, *supra*, 131 S.Ct. at 787; Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Harrington, 131 S.Ct. at 787, *citing*, Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688.  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 131 S.Ct. at 787, *quoting*, Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d

1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787, *quoting*, Strickland, 466 U.S. at 693. "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788, *quoting*, Strickland, 466 U.S. at 687. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Establishing that a state court's application of Strickland was unreasonable under 28 U.S.C. § 2254(d) is very difficult. Harrington, 131 S.Ct. at 788. Since the standards created by Strickland and § 2254(d) are both 'highly deferential,' when the two are applied in tandem, review is 'doubly' so. Harrington, 131 S.Ct. at 788, *quoting*, Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

As previously stated, Petitioner faults counsel for failing to move for severance. First, the Court agrees with Respondent that Petitioner has not shown counsel's decision to refrain from moving for a severance to be objectively unreasonable. Respondent points out that counsel could have opted for a joint trial in the hopes that the jury might believe her story that she did not know the full intentions of her co-defendants, especially in light of her limited role in the shooting as well as her background as compared with her co-defendants who were active gang members with extensive criminal backgrounds. Co-defendant Chea committed the shooting with an AK-47. (RT[4] 662-664, 669, 677-678.) Co-defendant Angel carried and fired a .45-caliber handgun during the incident. (RT 669, 672.) By comparison, Petitioner only drove the vehicle. (RT 665-666.) Also, counsel could have been concerned that had he sought a separate trial, there was a

---

[4]"RT" refers to the Reporter's Transcript on Appeal.

11

risk the jury would believe that no one would be held responsible for the shootings if they acquitted the lone defendant in the case.

Second, Petitioner fails to show prejudice resulting from counsel's decision, because Petitioner fails to show the trial court would have granted a severance if requested. "Joint trials are favored because they 'promote economy and efficiency'" and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." People v. Coffman, 34 Cal.4th 1, 40 (2004). Cal. Penal Code § 1098 provides, in pertinent part: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court orders separate trials." Factors that would ordinarily support a severance were not present in this case, such as incriminating confessions, confusion, or exonerating testimony. See People v. Champion, 9 Cal.4th 879, 904 (1995), *quoting* People v. Turner, 37 Cal.3d 302, 312 (1984). Petitioner argues that her association with co-defendants who were gang members was cause for severance because the negative gang evidence could unduly inflame the jury. However, Petitioner was charged with committing the murders for the benefit of, or in association with, a criminal street gang pursuant to Cal. Penal Code § 186.22(b). Therefore, the gang evidence was relevant and admissible against her in any case. Also, since most if not all of the evidence would have been admissible in a separate trial, Petitioner cannot demonstrate that even if counsel had succeeded in moving for a separate trial, the outcome would have been different.

Petitioner fails to show counsel was ineffective, or that the alleged ineffectiveness prejudiced her. The claim should be rejected.

2.  Multiple Shootings

In her next subclaim, Petitioner alleges her attorney was ineffective "in allowing thirty separate shootings to be entered into trial." (See Petition at 5.) This claim was not fairly presented to the California Supreme Court. In any case, it is without merit.

First, Petitioner fails to state what counsel could have done differently with respect to the thirty shootings. As previously discussed, Petitioner was charged with committing the offense for the benefit of or in association with a gang. Therefore, the gang evidence was relevant and

admissible. Counsel cannot be faulted for failing to make a frivolous motion. See <u>Rupe v. Wood</u>, 93 F.3d 1434, 1444-45 (9th Cir.1996) ("[T]he failure to take a futile action can never be deficient performance." ), *cert. denied*, 519 U.S. 1142 (1997); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir.) (counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel), *cert. denied*, 513 U.S. 1001 (1994). Second, Petitioner cannot show that actual prejudice resulted from defense counsel's failure to move for severance, since any motion to sever or exclude would have been denied because the evidence was relevant and admissible. See <u>United States v. Rodriguez-Ramirez</u>, 777 F.2d 454, 458 (9th Cir.1985) (no ineffective assistance of counsel when defendant failed to show severance motion "could have been granted" and he "suffered prejudice as a result of the unsevered trial"). The claim should be denied.

### 3. Multiple Defense Strategies

Petitioner next alleges defense counsel failed to protect her from "multiple defense strategies that painted petitioner falsely." (<u>See</u> Petition at 5.) This claim was also not fairly presented to the California Supreme Court. Nevertheless, there is no merit to the claim.

First, the Court notes that the claim is entirely conclusory and unsupported. Petitioner does not specify the multiple defense strategies and how they prejudiced her. Second, she does not state what counsel should have done differently. Petitioner fails to demonstrate any error by counsel or any prejudice resulting therefrom. The claim should be rejected.

### 4. Cross-Examination

Petitioner alleges defense counsel erred by modifying his cross-examination so as not to further anger the judge. She claims counsel also allowed restrictions to be placed on impeachment due to lack of transcripts. Petitioner raised this claim before the California Supreme Court where it was summarily denied.

In the claim presented to the California Supreme Court, Petitioner specified the witness Keo Som as the witness to which counsel modified his cross-examination. Again, Petitioner fails to state a claim. She does not state how counsel modified his cross-examination, what he should have done differently, and how counsel's actions prejudiced her. Moreover, the record reflects

that counsel cross-examined Keo Som extensively. (RT 678-701, 707-715, 721-768, 776-802, 1046-63.) Accordingly, the claim fails.

### 5. Lesser-included Offense

Finally, Petitioner faults counsel for failing to allow for a lesser-included offense. This claim was exhausted before the California Supreme Court.

Petitioner's claim must be rejected as it is clear it has no merit. The trial court in fact instructed the jury on second degree murder. (CT 466-467.) Therefore, it is impossible for Petitioner to demonstrate any prejudice.

### B. Prosecutorial Misconduct

Petitioner next claims the prosecutor committed misconduct by continuously associating her with the other defendants as gang affiliates. She states thirty shootings were introduced, but none of the perpetrators were named. She claims the prosecutor caused the jury to conclude that she shared responsibility for the shootings even though they were committed by ABZ gang members and she was not such a member. This claim was properly exhausted in the California Supreme Court.

A petitioner is entitled to habeas corpus relief if the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765 (1987), *quoting* United States v. Bagley, 473 U.S. 667 (1985). Any claim of prosecutorial misconduct must be reviewed within the context of the entire trial. Id. at 765-66; United States v. Weitzenhoff, 35 F.3d 1275, 1291 (9th Cir. 1994). The court must keep in mind that "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor" and "the aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." Smith v. Phillips, 455 U.S. 209, 219 (1982). "Improper argument does not, per se, violate a defendant's constitutional rights." Thompson v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996), *quoting* Jeffries v. Blodgett, 5 F.3d 1180,

1191 (9th Cir.1993). If prosecutorial misconduct is established, and it was constitutional error, the error must be evaluated pursuant to the harmless error test set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). See Thompson, 74 F.3d at 1577 ("Only if the argument were constitutional error would we have to decide whether the constitutional error was harmless.").

Petitioner's claim is conclusory and unsupported. She does not specify in the record where the prosecutor improperly represented that Petitioner was a gang member, and even if it did occur, how it caused the trial to be fundamentally unfair. As previously discussed, the gang evidence was relevant and admissible as to Petitioner insofar as she was charged with a gang enhancement. Moreover, as pointed out by Respondent, there is no clear ruling from the Supreme Court regarding the admission of prejudicial evidence as a violation of due process. See Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir.2009). The claim should be denied. 28 U.S.C. § 2254(a).

### C. Incomplete Discovery

In her final claim for relief, Petitioner alleges the trial court unfairly restricted the defense's cross-examination of key witnesses in violation of her constitutional rights. Petitioner contends the prosecutor only provided transcripts for ten out of the fifty recorded interviews. This claim was not fairly presented. However, the Court will address the claim as it is plainly without merit.

The record shows the prosecutor provided transcripts of taped interviews for those interviews he planned to present in court. He did not provide transcripts of the remaining witnesses; however, he did provide the actual recordings of those interviews. (RT 53.) Further, the record demonstrates that defense counsel knew at least three to four months prior to trial that the prosecutor only intended to prepare transcripts for the ten interviews he planned on introducing at trial. (RT 42.) Nothing prevented defense counsel from ordering transcription of the remaining interviews if he required them. (RT 48.) Petitioner points to no Supreme Court decision which would require a prosecutor to have every interview of every witness transcribed when the prosecutor does not intend to introduce them at trial. The prosecutor complied with California law in providing the actual recordings to defense counsel. He was under no obligation

to transcribe them for the defense. In any case, Petitioner makes no showing of how the lack of transcripts made any difference in the trial. The claim should be rejected.

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that this action be DENIED WITH PREJUDICE.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 2, 2012**              /s/ **Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE